## GOLDSTEIN v. WOLFSON et al.

### No. 130.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1943.

Sidney Wedeen and Nathaniel T. Helman, both of New York City, for Saul Goldstein, trustee-appellant.

April & Eisenrod, of New York City (Nathan April, of New York City, of counsel), for claimants-appellees.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

PER CURIAM.

Fannie Wolfson filed a claim against the bankrupt Woodley Men's Shop, Inc., for $2,225, and Stanley Greenfield a claim for $15,286.13. The trustee objected to these claims but the referee allowed them and made an order, after notice of settlement had been served on the claimants' attorney Helman on May 29, 1942, overruling the objections. This order was filed either June 2 or June 4, 1942.

Section 39, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, provides that: "A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge. * * *"

The trustee failed to file a petition for review with the referee within the ten days succeeding the entry of the order on June 2, or June 4, 1942, but on July 6, 1942, which was more than 30 days thereafter, moved for an extension by the court. The excuse presented for the delay was the illness and absence of Sidney Wedeen, one of the attorneys for the trustee. This excuse, however, must be regarded as trivial, for Mr. Helman, one of the attorneys, had written Wedeen on May 27, 1942, that "as soon as an order is made, I will appeal for a review and continue from that point on." Another excuse for the delay was that the trustee's attorneys were not served with a copy of the order. They were, however, served with notice of entry, had every reason to believe that it had been entered as a matter of routine, and notice and service upon them of a copy with notice of entry was not required.

Judge Inch,. to whom the application for an extension of the ten days within which the claimant might file a petition for review with the referee was made denied relief on the ground that no reason was given for ignoring the ten day rule and on the additional ground that no showing of merits was offered for dispensing with the time limitation. The second ground presented to the court was as insufficient as the first. It is true that the claims are objected to by the trustee for the following reasons:

"1—Under Section 15 of the Stock Corporation Law [Consol.Laws N.Y. c. 59]. Fannie Wolfson, being an officer, stockholder and director of the corporation should not receive any distribution upon her claim; 2—There was evidence at the hearings of preferential payments to Fannie Wolfson amounting to $1,235.00; 3—It was established that the claimants had entered into a subordination agreement with other creditors, by which these alleged loan claims were subordinated to the rights of other creditors. Consideration of fair dealing in equity require that these claims be disallowed for that reason; 4—The

balance of the objections are based upon the' ground that the monies were really a capital investment. Testimony was offered by representatives of the Credit Agency, who had informed Saul Wolfson, which the Trustee claimed demonstrated that the monies advanced by the mother were capital and not a loan. * * * It would appear that since these claims by members of the family of the bankrupt are so substantial as to involve a serious curtailment of the dividend to general creditors that the facts and the law connected with the objections of the Trustee should be reviewed. * * *"

Nathan April, the attorney for the claimants, filed an affidavit in opposition in which he stated:

"The Trustee claims that the loans made by the claimants were capital contributions. In spite of which fact, it is admitted that these advances were carried as loans upon the books of the company at all times; that credit information furnished to the creditors exhibited these advances as loans and not as capital and that the creditors in fact gave credit only after they made certain subordination agreements subordinating the loan to any claims they might have for merchandise sold. In other words, not only did the books and records of the corporation carry the advances as loans, not only did the credit statements carry them as loans, but the very creditors who are affected here recognized them as loans before they extended credit."

 It is evident from the foregoing that when the trustee asked the district judge to exercise his discretion in enlarging the time to file a petition for review he made no showing that Section 15 of the New York Stock Corporation Law was applicable to the case. The affidavits presented did not disclose a transfer to any officer, director or stockholder after the corporation had "refused to pay any of its notes or other obligations" or a transfer to any such person or persons when the corporation was "insolvent or its insolvency * * * imminent." In addition to this, Section 15 relates only to the right to recover unlawful preferences or fraudulent transfers and has no relation to proof of claims. While it was argued that there were preferential payments amounting to $1,235, there was no showing by affidavit of the facts necessary to establish a preference, and, in view of the requirements of § 57, sub. g of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. g, the referee must have concluded as a matter of fact that there was no preference. If there were agreements by the claimants to subordinate their claims to those of other creditors, we have been referred to no decision holding that a creditor who has agreed to subordinate his claim to that of other creditors ceases to be a creditor.

 The trustee principally relies on the contention that the advances by the claimants were properly to be considered as capital contributions rather than loans. They were carried, however, as loans on the books of the company. The argument advanced to show that they were not loans is that dividends to these claimants would reduce the dividends to other creditors. But there is no law which prevents a stock-, holder, even if holding a majority or all of the stock of a corporation, from lending money to his company, Wheeler v. Smith, 9 Cir., 30 F.2d 59, 61, though it is said that such loans should be "scrutinized with care." To justify the trustee's position there should have been a showing in the present case that the claimant's advances were not bona fide loans. The decisions of the Circuit Court of Appeals for the Fifth Circuit in Arnold v. Phillips, 117 F.2d 497, and of the Massachusetts Supreme Court in Albert Richards Co. v. Mayfair, Inc., 287 Mass. 280, 191 N.E. 430, are to be distinguished on the ground that in the former case it was found that only capital contributions were intended at the time when the advances were made and in the latter case the advances had to be set off against sums due for unpaid stock subscriptions. Indeed it was said in Albert Richards Co. v. Mayfair, Inc., supra, that in a proper case a stockholder might loan money to his company, and Salomon v. A. Salomon & Co., Ltd., [1897], A.C. 22, a pertinent English decision to this effect was cited as an authority. The affidavit relied on in the case at bar made no showing that the advances were other than the loans which they purported to be.

 We find no abuse of discretion on the part of the district court in denying relief to the claimants. His exercise of discretion should, therefore, control. Pfister v. Northern Illinois Finance Corp., 63 S.Ct. 133, 87 L.Ed. ——, decided in the Supreme Court on November 16, 1942.

Order affirmed.