In re ROSENBERG.

SCHIFF v. ARANOFF.

No. 65.

Circuit Court of Appeals, Second Circuit.

Dec. 5, 1944.

---

Samuel Newfield, of New York City, for appellants.

Herman G. Robbins, of Brooklyn, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellant, the trustee in bankruptcy of the estate of Martha Rosenberg, has appealed from that part of an order of the District Court for the Southern District of New York which reversed a turnover order entered by a referee which ran jointly and severally against the appellee and his father Abraham Aranov. The petition was brought against the bankrupt also but it was found that she had no part of the money involved and the trustee acquiesced in that. Nor did the father seek a review of the referee's order.

Mrs. Rosenberg is an elderly and feeble woman who at the time of the hearings before the referee and for more than two years previously had been living in the appellee's home in New York. His wife and father were the others residing there at the time of the hearings on this petition and his mother had also lived there until her death, the date of which does not appear but seems to have been not long before these proceedings were commenced. The appellee rented the apartment and in the main supported the family. He ran a laundry in which his father worked part of the time at a salary of $15 a week, and apparently his mother had also worked there occasionally.

The mother, Emma Aranov, was a niece of the bankrupt's husband. He died on September 21, 1940, leaving his entire estate to his widow. When his estate was settled she had between eleven and twelve thousand dollars in cash which came into the possession of her niece, Gertrude Sunshine, who had been taking care of her

and looking after her affairs. Upon the payment of $1000 to the Home of the Sons and Daughters of Israel, in New York City, that institution accepted Mrs. Rosenberg as an inmate and undertook to provide care and maintenance for her for the remainder of her life.

Thereafter Emma Aranov went to see Mrs. Rosenberg and arrangements were made for Mrs. Rosenberg's leaving the home and going to live with the Aranov family. She did so on or about October 4, 1941, but not before she had agreed to pay Mrs. Aranov twenty dollars a week for room, board and care and to make a will leaving her entire estate to her. This agreement was put in writing by an attorney named Karman who acted for Mrs. Rosenberg and another attorney acting for Mrs. Aranov and the will was drawn and executed as agreed.

There was some dispute about a claim made by Miss Sunshine against Mrs. Rosenberg and no adjustment of it was ever made. But Miss Sunshine was willing to pay over what she had left of Mrs. Rosenberg's money to Mr. Karman upon the understanding that the amount of her claim when established by a judgment would be paid. Miss Sunshine did pay over $10,177.87 to Mr. Karman for Mrs. Rosenberg, and he deposited $9000 of it in a savings bank in her name and put the remainder in a checking account to be withdrawn as needed by her upon checks countersigned by Karman.

This arrangement seems to have worked well for a while and Karman went to the Aranov apartment once a week to countersign checks including the weekly check of $20 payable to Mrs. Aranov. But presently Mrs. Aranov objected to the requirement that Karman countersign Mrs. Rosenberg's checks, and when he insisted that it was his right and duty to continue to do so he was denied admission to the Aranov apartment. He thereupon notified the bank not to pay checks unless they were countersigned by him. Thereafter on January 13, 1943, Mrs. Aranov and Mrs. Rosenberg executed a new agreement revoking the first one. The next day the $9000 was withdrawn from the savings account by a cashier's check payable to Martha Rosenberg, who endorsed the check to Mrs. Aranov and the latter deposited it in a bank in an account of her own. She later withdrew it and deposited it in her name

in separate accounts in three banks in deposits of $2000, $3000 and $4000 respectively.

Subsequently to this disposition of that money Gertrude Sunshine recovered judgment for $1607.84 in the City Court against Mrs. Rosenberg but the judgment was not satisfied. Mrs. Aranov withdrew all three deposits after the Sunshine judgment was entered and gave the money to Mrs. Rosenberg, who delivered it to Abraham Aranov for safe keeping. It was this money that the trustee sought to recover by means of the turnover order in this proceeding. Abraham Aranov admitted that he received it from Mrs. Rosenberg. Max Aranoff denied that he got any of it, knew anything about it, or had anything to do with the arrangements made for the care and support of Mrs. Rosenberg in the Aranov home.

The testimony of Abraham Aranov as to what he did with the money was given no credence either by the referee or by the district judge and it certainly deserved none. It was nothing but a fantastic tale of the loss of all the money betting on horse races through a bookmaker he met on the street, about whom he knew practically nothing except that his name was Bill.

 The connection of the appellee with this phase of the affair and his possession and control of the money through participation in the scheme to get it from Mrs. Rosenberg were shown largely by circumstantial evidence which the experienced district judge thought was not clear and convincing within the rule of Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L. Ed. 419, and his judgment about that is entitled to be given much weight. Yet we think the entire situation as shown by this record provides so much support for the referee's finding that it cannot be held clearly erroneous. Of course the district judge has the responsibility for decision of the review of a referee's order and the court's power to modify or reverse is unquestioned, but it should be exercised only when error has been plainly shown. Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975; McDonald v. First National Bank of Attleboro, 1 Cir., 70 F. 2d 69.

 There was no evidence that anyone undertook to rob the bankrupt in the sense that the crime of robbery was committed, and nothing was put upon that point in the decision below nor can it fairly be thought that the referee used the word to convey such a meaning. But there was enough to show that Abraham and Emma Aranov and Max Aranoff did concoct and carry out a scheme to get the money into their possession and secrete it for their own benefit.

There was ample evidence to show, despite his denials, not only that the appellee knew what was done in respect to taking Mrs. Rosenberg into the Aranov home to provide for her care and support for life but that he was present during some of those negotiations and took part in them. He knew about the Sunshine judgment and shared the determination of his mother that it should not be paid as had been agreed. There was evidently a close family relationship between the father and mother and son which makes it even more reasonable to believe that he was a party to the fraud. His testimony was replete with contradictions and evasions, and the inference that he was acting through his father with the aid of his mother to get the money into his and their possession and control is too strong to justify overturning the referee's finding. And as there was no reasonable explanation of what became of the money after Abraham Aranov received it, the inference that it was still in the possession and control of the surviving conspirators was properly drawn and given effect. In re H. Magen Co., 2 Cir., 10 F. 2d 91; Seligson v. Goldsmith, 2 Cir., 128 F.2d 997.

Order reversed.