## In re MADELAINE, Inc.

### No. 47, Docket 20712.

Circuit Court of Appeals, Second Circuit.

Dec. 2, 1947.

Baer & Marks, of New York City (George H. Klein, of New York City, of counsel), for appellants.

Krause, Hirsch, Levin & Heilpern, of New York City (Elliot L. Krause, of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

Upon its voluntary petition Madelaine, Inc., was adjudicated bankrupt in November 1944 and the appellee was duly appointed its trustee in January 1945. Thereafter the appellants filed proofs of claims, each claiming to have lent the bankrupt $3,000 as evidenced by a letter signed by the bankrupt's president. In September 1946 the trustee in bankruptcy moved for a re-examination of such claims on the ground that the alleged loans were in fact capital contributions and the claimants or some of them were stock-

holders and directors in control of the bankrupt at the time of the alleged loans. After hearings the referee made findings of fact to the effect that (1) on or about September 15, 1944 Walter J. Rich, Jr., acting for himself and the other eight claimants, had acquired all of the corporate stock of the bankrupt; (2) each claimant had loaned the bankrupt $3,000; (3) four of them became directors of the bankrupt on or about September 15, 1944; and (4) none of the claimants who were stockholders or directors, either actual or putative, had taken advantage of their position as against the other creditors of the bankrupt. Accordingly the referee concluded as a matter of law that the claimants were creditors standing on an equality with other general creditors, and he allowed their claims as filed. Upon review the district judge reversed the referee's second and fourth findings of fact and his conclusion of law, and held that the claims should be allowed only subject to payment in full of the claims of general creditors of the bankrupt. Eight of the nine claimants have appealed.[1]

■ Whether the referee's second and fourth findings were reversed because "contrary to law," as the opening sentence of the court's opinion seems to indicate, or because contrary to the proven facts, as other parts of the opinion suggest, we think the court erred in upsetting them. There is nothing illegal in an officer or director lending money to his corporation provided he does not use his corporate position to defraud creditors or take unfair advantage of them. Goldstein v. Wolfson, 2 Cir., 132 F.2d 624, 626; Arnold v. Phillips, 5 Cir., 117 F.2d 497, 503. The case of Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 248, 84 L.Ed. 281, is not to the contrary, for there the dominant stockholder used his claim for accumulated salary to defraud another creditor pursuant to a "planned and fraudulent scheme." In the case at bar, as will appear from our later discussion, the claimants did not act fraudulently or take unfair advantage of creditors. Hence the issue was solely one of fact—whether the funds they supplied to the corporation were advanced as loans or were put in as capital contributions.

An experienced referee who heard the witnesses found that the money was lent. Such finding should not be reversed unless clearly erroneous. In re Rosenberg, 2 Cir., 145 F. 2d 896, 898; In re Patrizzo, 2 Cir., 105 F.2d 182.

■ From the testimony of attorney Marks, the only witness called by the claimants, it appears that Mr. Walter Rich, acting for himself and the others, agreed on September 15, 1944 to purchase all the stock of the corporation from its then owners for the price of $5,000, of which $2,614.24 was paid down. Before signing the agreement, the buyers knew that the corporation's cash available for operations was very low; they told their attorney that each of them was going to put up $3,000 in addition to his share of the cost of stock and asked how the matter should be handled. He advised them to put the money into the corporation by way of loans, saying that they could later decide whether they wanted to recapitalize, "but in the meantime until you have operated for a while and see exactly what the situation is you had better safeguard yourselves by putting this money in as loans." This was sound and proper advice, for there is nothing improper in a stockholder or director assisting his corporation by a loan in the expectation that it will thereby be enabled to continue in business. Stuart v. Larson, 8 Cir., 298 F. 223, 225, 38 A.L.R. 79. The attorney's advice was adopted, and the president of the corporation wrote a letter to each of the contributors acknowledging receipt of his $3,000 as a loan. These letters were attached to the proofs of claim. The loans were also recorded in the corporation's ledger. Before concluding their purchase of the stock the buyers had had the corporation's books audited, but four or five weeks after the buyers took over the management of the corporation, they discovered that the accounts receivable had been seriously overstated on the books and that if immediately pressing obligations were paid, the corporation would be left without assets and approximately $25,000 of liabilities would remain unpaid. On November 15, 1944 the directors instructed the president to file a voluntary petition in bankruptcy on

---

[1] One of the nine, Alex Limbach, did not appeal.

behalf of the corporation whose liabilities were said to be about $40,000 and whose assets consisted of $11,000 cash in bank and $5,000 accounts receivable. It was conceded that all of the $27,000 supplied by the claimants had gone into the corporation's bank account and that no payments had been made to them after September 15, 1944.

The foregoing story, if credited by the referee, as it evidently was, amply justified his findings of fact. The trustee seeks to cast doubt upon it by the fact that the corporate books showed a capital deficit of some $3,000 at the time the stock of the corporation was purchased by the claimants, and by citing the testimony of Alex Limbach, one of the claimants, who was called as a witness by the trustee. He testified that Walter Rich told him he was to have an interest in the corporation; that on September 18, 1944 he gave Rich a check for $3,000 and Rich did not say that this was to be a loan to the corporation or what it represented. He further testified that he had confidence in the Rich brothers and "made no inquiries regarding what they were doing or how they were doing it." Evidently Limbach was content to let Rich determine what kind of interest in the enterprise his $3,000 should represent. Hence it is not particularly significant that Limbach did not know that Rich put it in as a loan. The other witness called by the trustee was Simon Quartin, a salesman of Quartin Specialty Box Co. This company was, and still is, a creditor of the bankrupt. About the middle of September 1944 Quartin was introduced to the Messrs. Rich at the bankrupt's office and was given a check signed by one of them for the balance then due his company. According to Quartin's testimony Mr. Eugene Rich said he was a wealthy man and that he and his associates were going to make the bankrupt a very large company. Quartin testified further: "He was telling me that there were nine friends that were putting $3,000 in and getting $3,000 of stock each, and that if the company needed any more money they could put out as much money as was needed into the company." Later the Quartin Specialty Box Co. made further sales to the bankrupt on credit, but there is no direct testimony that it did so in reliance on the statements attributed to Rich by Quartin. Even if the referee gave credence to Mr. Quartin's testimony, which he was not necessarily required to do, the statements attributed to Mr. Rich were more in the nature of financial bragging than representations that the new owners had already made capital contributions. This testimony was not enough in our opinion to justify disregarding the highly credible story of attorney Marks, which the experienced referee accepted.

The order is reversed with instructions to reinstate the order of the referee allowing the claims of the appellants as general creditors of the bankrupt.