309 F.2d 886
 May SPACH, Edwin L. Hubbard and John Nicholas, as
Co-Trustees of B & L Farms Co., a Florida corporation,
Bankrupt, and Davison Chemical Co., a division of W. R.
Grace & Company, International Minerals & Chemical
Corporation, American Machinery Corp., Wilson & Toomer
Fertilizer Company and Hoyt Bragdon, as Trustee for
stockholders of Trueman Fertilizer Company, a dissolved
Florida corporation, Appellants,
v.
Robin I. BRYANT and Clarence A. Lounsbury, Appellees.
 No. 19079.
 United States Court of Appeals Fifth Circuit.
 Nov. 21, 1962.
 
 Edwin L. Hubbard, Coral Gables, Fla., Ralph H. Martin, Jacksonville, Fla., William P. Tomasello and Monterey Campbell, Bartow, Fla., John W. Hardwicke, Baltimore, Md., Irving Vichness, Newark, N.J., for appellants.
 B. E. Hendricks, Robert E. Venney, Hendricks & Hendricks, Miami, Fla., for appellees.
 Before JONES, WISDOM and GEWIN Circuit Judges.
 GEWIN, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the District Court for the Southern District of Florida refusing to subordinate certain claims of the appellees, Robin I. Bryant and Clarence A. Lounsbury, filed by them against a bankrupt corporation, to the rights of other unsecured creditors.
 
 
 2
 B & L Farms, a Florida corporation, filed a Plan of Arrangement under Chapter 11 of the Bankruptcy Act[1] in August of 1858 and a Receiver was appointed to administer the plan. The Plan of Arrangement was unsuccessful, the corporation was adjudicated a bankrupt in June of 1959, and trustees were appointed. Bryant and Lounsbury are the only stockholders of the corporation and are its President and Secretary-Treasurer respectively. Bryant and Lounsbury filed claims in the amount of $87,829.30 and $140,309.71 respectively as unsecured creditors for alleged loans or advances to the bankrupt.
 
 
 3
 The Referee allowed the amounts claimed by each appellee as unsecured claims, but directed that $50,000.00 of each of the allowed claims be subordinated to the rights of other unsecured creditors for the reason that said sums represented advances made, which were deemed by the Referee to be unnecessary, made solely for bookkeeping or tax purposes, and at a time when the corporation was not in need of operating capital, funds or loans. Petitions for review were filed by the appellees objecting to the portion of the order of the Referee which subordinated $50,000.00 of their respective claims to the claims of other unsecured creditors. The co-trustees sought review objecting to that portion of the order which gave parity to the claims of the appellees in excess of the mentioned sum of $50,000.00 A number of creditors filed petitions for review objecting to the order of the Referee in its entirety, contending that the Referee erred in allowing claims of appellees as unsecured claims and in granting parity to portions of the claims with other unsecured creditors.
 
 
 4
 Upon review, the trial court held that the record contained ample evidence to sustain that portion of the order which allowed the claims of the appellees as unsecured claims and granted parity to a portion of such claims with the claims of other unsecured creditors; but further held that the record failed to show that there was sufficient evidence to support that portion of the Referee's order which subordinated $50,000.00 of each of the claims to the claims of other unsecured creditors. The effect of the order of the trial court was to put the claims of the appellees on a parity with other unsecured creditors of the bankrupt corporation.
 
 
 5
 Commencing about the year 1928, Bryant and Lounsbury began farming operations in Dade County, Florida, as a partnership, which continued for several years. Thereafter, appellees formed the corporation which is now in bankruptcy for the purpose of engaging in the business of farming, primarily growing and shipping tomatoes, and to a limited extent growing other crops such as potatoes, soy beans and corn. The original capital paid in by Bryant and Lounsbury was $146,000.00. At the end of the first fiscal year in 1950, the corporation had earned a taxable income of $39,000.00. The corporation continued to grow until its taxable income amounted to approximately two million dollars and its gross sales were several million annually. At one time the corporation employed over 3,000 people with a payroll of approximately $100,000.00 per week during the peak season. At the beginning, the corporation had only a few hundred acres under cultivation, but immediately preceding bankruptcy it had several thousand acres in cultivation. During the growth of the corporation, demands for substantial operating funds exceeded corporate income and the corporation borrowed money from various sources, including the officers of the bankrupt. Money advanced by the appellees was described on the books as 'personal accounts' and 'note accounts'. The books reflected withdrawals and advances and the claims filed are shown by the books to be the credit balances in favor of the appellees. Actually, no notes were ever issued by the corporation.
 
 
 6
 In July of 1957 each of the appellees drew from the corporation the sum of $50,000.00 as salaries and immediately wrote personal checks payable to the corporation for an equivalent sum, which were deposited by the corporation. This is the amount which the Referee subordinated for the reasons stated in his order and mentioned above. The trial court felt that the last mentioned transaction was no different in kind from those allowed by the Referee.
 
 
 7
 Although the corporation enjoyed unusual growth and some prosperous years, the 1957-58 growing season was a disastrous year which resulted in bankruptcy. There was ample evidence to prove that during this growing season there were heavy rains, followed by a freeze and disastrous high winds, which resulted in no production for sale.
 
 
 8
 Except as limited by the Bankruptcy Act, courts of bankruptcy are essentially courts of equity and follow equitable principles. Following such principles it is the duty of the bankruptcy court to sift the circumstances surrounding any claim in order to prevent injustice or fraud in the distribution of the bankrupt's estate. This duty requires careful attention and special scrutiny when the claimants are officers, directors or stockholders of the corporate bankrupt. 11 U.S.C.A. 11; Securities and Exchange Commission v. U.S. Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).
 
 
 9
 The rule is stated in the Pepper case as follows:
 
 
 10
 'It is reached where the claim asserted is void or voidable because the vote of the interested director or stockholder helped bring it into being or where the history of the corporation shows dominancy and exploitation on the part of the claimant. It is also reached where on the facts the bankrupt has been used merely as a corporate pocket of the dominant stockholder, who, with disregard of the substance or form of corporate management, has treated its affairs as his own. And so-called loans or advances by the dominant or controlling stockholder will be subordinated to claims of other creditors and thus teated in effect as capital contributions by the stockholder not only in the foregoing types of situations, but also where the paid-in capital is purely nominal, the capital necessary for the scope and magnitude of the operations of the company being furnished by the stockholder as a loan.'
 
 
 11
 Appellants contend that Bryant and Lounsbury as the only officers and stockholders of the bankrupt are guilty of exploiting the corporation to such an extent that their conduct is offensive to equity and good conscience and therefore their claims should not be on a parity with other bona fide unsecured creditors.
 
 
 12
 In the careful examination and scrutiny of the claims of dominant stockholders or officers of a bankrupt corporation, the burden is on such stockholders or officers to show the inherent fairness and good faith of the transactions involved, but such a relationship does not ipso facto invalidate an honest, bona fide debt. The essence of the test, giving proper consideration to all the surrounding circumstances, is whether the transactions have the earmarks of an arm's length bargain. In our case of Arnold v. Phillips, 5 Cir., 1941, 117 F.2d 497, the President and dominant stockholder of a corporation advanced money to the corporation two years after its beginning when financial reverses occurred. It was there held that contributions in forming the corporation and building its fixed assets to the point of establishing it as an operating concern were capital contributions, but advances made thereafter were valid loans.
 
 
 13
 'Adversity then occurring raised a problemd not different from that which commonly faces a corporation having losses. It may borrow to meet its needs. Had this corporation borrowed of a bank upon the security of the plant, the debt would no doubt be valid. What would render it invalid when Arnold furnished the money? * * * The money went to relieve the needs of the business exactly as it would have done if a bank had advanced it. No other creditor was prejudiced or misled.'
 
 
 14
 As pointed out in In Re Madelaine, Inc., 2 Cir., 1947, 164 F.2d 419:
 
 
 15
 'There is nothing illegal in an officer or director lending money to his corporation provided he does not use his corporate position to defraud creditors or take unfair advantage of them.'
 
 
 16
 The record clearly supports the conclusion that appellees developed the bankrupt corporation from a modest farming business into a multi-million dollar operation They devoted their full time to its operation and they are entitled to a return on their investment in the form of dividends and to reasonable compensation for work performed for the corporation. McDonell v. Sampsell, 9 Cir., 1952, 193 F.2d 954. In circumstances where there are only two stockholders and two officers, it is obvious that salaries must be fixed by the persons receiving them. As a practical matter, it is often necessary for stockholders and officers to advance money to the corporation. This fact alone does not invalidate such transactions. In this case all the mutual financial obligations of the appellees and the corporate organization were carefully shown by the corporate books. The loans were made on a fair and reasonable basis. The salaries paid were not unreasonable in view iof the work and responsibility involved.
 
 
 17
 We conclude that the conclusions reached by the trial court were adequately supported by substantial evidence, that he properly reviewed the conclusions of the Referee and we cannot conclude that the trial courths findings and conclusions are patently erroneous as a matter of law. Stewart v. Ganey, 5 Cir., 1941, 116 F.2d 1010. Viewed in its entirety, the record reveals this to be the case of two hard working businessmen who took a small business and built it into a large and successful farming corporation. By its very nature farming is a precariuos and somewhat spoeculative business and is at the mercy of the elements. We cannot say that there was sufficient evidence of fraud or bad faith on the part of the appellees, or adequate proof of other reasons to invalidate or subordinate their claims; or that the money involved was not fully paid into the corporation in an honest effort to continue the corporate business. We conclude therefore that the judgment of the trial court should be and it is hereby
 
 
 18
 Affirmed.
 
 
 
 [1]
 11 U.S.C.A. 701 et seq