**In the Matter of HOSPITAL GENERAL SAN CARLOS, INC., Debtor.**

**Bankruptcy No. 76–00279(SEK).**

United States Bankruptcy Court, D. Puerto Rico.

July 31, 1989.

---

## OPINION AND ORDER

SARA E. De JESUS, Bankruptcy Judge.

This case is before the Court on a Motion filed by the Debtor seeking reconsideration of an Order entered on May 25, 1984, regarding Claim # 4 filed by Dr. Víctor Segarra.

1. The Exhibits show the following concise recitation of undisputed facts. Around June 25, 1975 the stockholders of Hospital San Carlos, Inc. (including Dr. Segarra), sold all of their shares to San Carlos Planning Corp., whose sole stockholder is Mr. Edward S. Kanbar. Payment of the purchase price was guaranteed by a bearer mortgage note and mortgage encumbering the land where the hospital stands, executed by Mr. Kanbar as Debtor's President. Then Mr. Kanbar, as President of San Carlos Planning, pledged the mortgage note to one Fernández Torrecillas who would collect the sales price for the stockholder-sellers. San Carlos Planning did not pay the entire amount of the purchase price. Suits ensued, including the one filed before the Hon. Judge Cerezo and referred to hearing. Either as part of a settlement of that suit or through resolution or recission of the purchase/sale contract, all the sellers except Dr. Segarra recuperated their stocks. The Sellers subsequently sold their shares to Dr. Alvarez. Dr. Alvarez also acquired the shares which had originally belonged to Dr. Segarra from San Carlos Planning' Corp. Dr. Segarra has never been fully paid for his shares by either San

The background, procedural history and facts which led to the filing of this Motion are contained in Opinion and Orders entered by Hon. Beckerleg and by the Hon. Judge José Antonio Fuste, incorporated as Exhibits A and B to this Opinion, and also 76 BR 10. Suffice it to say that the Debtor, Hospital General San Carlos, Inc., is asking the Court to reconsider the allowance of Dr. Segarra's claim No. 4 as a secured claim, with its payment subordinated to the payment of Debtor's "general creditors".[1]

Debtor's grounds for reconsideration are as follows:

"a) The transaction that gave rise to such claim and mortgage lien is fraudulent pursuant to Section 67(d)(1), (2), and (5) of the Bankruptcy Act, since the alleged transfer constituting the mortgage lien claimed by Dr. Segarra is an unperfected security interest which is deemed to have been made immediately before the filing of the petition in this case by debtor.

b) Such claim and the mortgage allegedly securing the same is fraudulent against creditors of the debtor having claims provable under the Act, whereby the same is null and void against the debtor, pursuant to Section 67(d)(6) and

Carlos Planning Corp. or by Dr. Alvarez. He is therefore, claiming payment as a secured creditor by virtue of the pledged mortgage note encumbering the Debtor's realty thru a proof of claim No. 4 filed in this case.

The issue before the Court has always been the validity of the transactions by which Dr. Segarra obtained his status as creditor, even though the claim has been questioned on the basis of different legal theories. The May 25th 1984 Opinion of Judge Beckerleg, allowed claim No. 4 "as claimed [i.e., secured] but ... any payment on this claim shall be withheld and postponed until all general creditors have been paid in full." Only Dr. Segarra filed an appeal which was dismissed by Judge Fusté. A subsequent Order entered by Judge Beckerleg authorized Debtor to borrow $2.5 million provided, among others, the proceeds were used to pay the "defined indebtedness" or general creditors mentioned in the May, 1984 Opinion. Thus, at this time the record shows all of Debtor's general creditors affected by the sale of the stockholder's shares and all the shareholders, except Dr. Segarra, have been paid in full.

Section 403 of Act No. 3 approved January 9, 1956, 14 LPRA 1403.

c) The mentioned claim and the unperfected security interest allegedly securing the same are null and void as to the debtor, pursuant to Section 70(c) of the Bankruptcy Act, since the debtor, as of the date of bankruptcy, has the right and powers of a creditor who upon such date obtained a lien by legal or equitable proceedings upon the realty allegedly encumbered with the mortgage lien supporting claim number 4 of Dr. Víctor Segarra, upon which property a creditor of the debtor upon a simple contract could have obtained such a lien.''

The issue is whether there are sufficient grounds for granting the reconsideration pursuant to Rule 307.[2]

■ Rule 307 is a procedural provision allowing the reconsideration of claims that have already been allowed or disallowed, and has nothing to do with the substantive question of what claims are provable and allowable.[3] Thus, the proceeding for reconsideration involves two steps: (1) the movant must first convince the Court there are sufficient grounds for it to schedule a reconsideration hearing; and, (2) at the hearing on reconsideration movant must be able to produce evidence which will cause the Court to allow the claim to stand, be reduced or be expunged.[4]

■ The Motion may be filed by a party in interest including the debtor, who must allege cause for the reconsideration. Courts have held that, "The clearest cause for reconsideration is the discovery, subsequent to allowance [of a claim], of new relevant facts or evidence that could not have been discovered at an earlier stage, or the discovery of clear errors in the order of allowance."[5] Thus, until the estate is closed, and even when it has been closed on petition for reopening, the allowance of a claim is subject to reconsideration provided sufficient cause has been alleged and the moving party is not precluded from presenting cause for the reconsideration by the doctrines of laches and estoppel.[6] Lastly, the allowance of the reconsideration lies within the sound discretion of the court.[7]

■ Debtor alleges that the mortgage note issued upon the sale of Debtor's stock to San Carlos Planning Corp. and pledged to Mr. Fernández Torrecillas (who was in charge of collecting the payment), was not delivered on the date the pledge was executed and notarized. Therefore, Debtor argues, under state law the pledged note is an unperfected security interest because it lacks certainty as to the date it was delivered. Under the strong arm clause of the U.S. Bankruptcy Act, an unperfected security interest could be avoided by Debtor, without regard to the time limits set forth in the avoidance of fraudulent conveyance provisions of the Act. If Debtor could avoid the pledge because it was not perfected according to the laws of Puerto Rico, Dr. Segarra would lose his secured claim which he currently holds by virtue of the pledged mortgage note which payment is guaranteed by the lien encumbering the Hospital's grounds.

2. This Rule supersedes Section 57(k) of the Act and General Order 21(6). See *3 Collier on Bankruptcy,* Section 57.23 (14th ed.) and Advisory Committee's Note on Rule 307, *Collier Bankruptcy Act and Rules,* Part 2 (1976 Collier Pamphlet Edition).

3. *3 Collier on Bankruptcy,* Section 57.23[3] (14th ed.)

4. All arguments and hearings held thus far are attempts of Debtor to meet this first step in the two pronged test. *3 Collier on Bankruptcy,* Section 57.23 (14th ed.); *In re Empire Flooring Co.,* 43 F.2d 748 (D.C.W.D.Pa., 1930).

5. *3 Collier on Bankruptcy,* Section 57.23[3] (14th ed.); *In re Woodley Men's Shop, Inc.,* 46 F.Supp. 827 (D.C.E.D., N.Y., 1942), aff'd. *Goldstein v. Woolfson,* 132 F.2d 624 (C.A.2, 1943); *In re Prudence Co., Inc.,* 30 F.Supp. 639 (D.C.E.D., N.Y., 1939); *In re El Dorado Ice and Coal Co. v. Winnfield Light & Ice Co.,* 290 F. 180 (C.A. 8, 1923); *In re Ankeny,* 100 F. 614 (D.C.N.D. Iowa, 1900); *Castañer v. Mora,* 234 F.2d 710 (C.A. 1, 1956); *Lewith v. Irving Trust Co.,* 67 F.2d 855 (C.A.2, 1933).

6. *3 Collier on Bankruptcy,* Section 57.23 (14th ed.).

7. *McLeod v. Boone,* 91 F.2d 71 (C.A.9, 1937).

What *new relevant evidence,* not available in 1984 when the Debtor first objected to Dr. Segarra's claim and was afforded a hearing, is now brought to the Court's attention?

The only "new evidence" produced by Debtor to substantiate this new legal theory is stated as follows: "Subsequent to the allowance of Segarra's claim, the Debtor discovered new facts and/or evidence that Segarra has no valid claim against the estate, to wit: On May 1, 1985, subsequent to the allowance of Segarra's claim, the Debtor discovered according to the Judgment in *Segarra v. Kanbar,* Civil Case 76–1056(CC), the only one liable to Segarra's claim was San Carlos Planning Corporation, not the Debtor's estate." The Debtor's estate may not be personally liable to Dr. Segarra, but so long as the pledge of the mortgage note remains valid, property of this estate in bankruptcy may be liable *in rem* for payment of Dr. Segarra's portion of the sales price.

Furthermore, the avoidance of the pledge under the strong arm clause of the Act would depend on the date the pledge was executed and the date the pledged mortgage note was delivered to Mr. Fernández Torrecillas. These relevant dates appear in documents which were available to the Debtor at the time it first objected to Dr. Segarra's claim.[8] Moreover, Judge Cerezo's opinion determining who was personally liable for the purchase price to Dr. Segarra, (Mr. Kanbar or his corporation San Carlos Planning), is not needed to adjudicate the avoidance of the pledge.

Hence, Debtor has not offered any new, unknown or concealed fact or evidence which would cause this Court to grant the reconsideration requested. The Court views the Motion as Debtor's attempt to relitigate its objection to Dr. Segarra's claim by invoking a legal theory different from the one raised in 1984, but based on the same evidence available when the matter was heard and adjudicated both in bankruptcy and on appeal before the U.S. District Court. Therefore, Debtor's reliance on Rule 307 is misplaced.

Wherefore, Debtor's Motion is denied because Debtor has not shown the cause required by Rule 307.

## EXHIBIT A

In the United States Bankruptcy Court

for the District of Puerto Rico

B–76–279(B)

In re: Hospital General San
Carlos, Inc., Debtor

## OPINION AND ORDER CLAIM NO. 4
## DR. VICTOR SEGARRA

Dr. Victor Segarra on Dec. 20, 1976 filed herein Claim No. 4. Although filed as unsecured, from the face of the claim it appears that the creditor claims $422,-075.65 plus interest at 6% per annum from May 1975, and $25,264.62 with interest at 9% per annum and that creditor claimed a security interest by virtue of a participation in a real estate mortgage.

On April 9, 1984, debtor filed an objection to this claim. The objections are as follows:

1. The mortgage is null and void because not executed with the consent of the number of directors required by the Articles of Incorporation.

2. The mortgage is null and void because executed for the sole benefit of the directors and stockholders of directors of San Carlos Planning and not for the benefit of debtor.

After due notice an evidentiary hearing was held on April 2, 1984; we have also received memoranda from the parties. A review of the factual background is essential to deal with the objections to the claim.

Dr. Segarra was one of the founders, principal stockholder, incorporator, and a one time director of debtor, Hospital General San Carlos, Inc., by 1974 and continuing into 1975 was undisputably in poor financial situation, near collapse; its working capital deficit exceeded $500,000 (about half of which was accumulated taxes), it had losses in 1974 and 1975 and its accumu-

---

8. See Exhibit A, p. 2.

lated losses were nearly one million. This adverse condition of the financial affairs of the debtor was confirmed by an external auditor [1].

In this stage of affairs, the stockholders were faced with complete collapse, investing further in the debtor, or selling to someone who could provide the financing; all chose to sell to an Edward Kanbar who formed a solely owned corporation known as San Carlos Planning Corporation for this purpose. Under the sale arrangement, each of the then stockholders of debtor sold and transferred their stockholdings in Hospital General San Carlos, Inc., to San Carlos Planning Corp. receiving a down payment of approximately 9% with the balance deferred for 5 or 6 years but secured by a mortgage note of $3 million in turn guaranteed by a mortgage upon the real property of debtor, that is of Hospital General San Carlos, Inc. Each of the selling stockholders received a participation in this mortgage note corresponding to the percentage of their stockholdings in debtor. In the specific case of Dr. Segarra his stock in debtor was sold for $422,000 of which he received $35,000 down leaving a deferred balance due him of $387,000—this deferred balance was secured by a participation of 13% of the mortgage note. The mortgage was executed on June 25, 1975. There is no indication before us that Dr. Segarra or any of the stockholders of debtor were unhappy with or opposed to the sale and mortgage.

Kanbar or San Carlos Planning Corporation never completed the purchase price, and subsequently the original stockholders, with the exception of Dr. Segarra, reacquired their stockholdings in the debtor and then sold their stock rights to a Dr. José Alvarez; as indicated, Dr. Segarra did not join in this second transaction so he remained with his participation in the mortgage note, and it is on this participation that he bases his claim. To complete the picture, Dr. Alvarez who now owns, or controls all of the debtor's stock and now manages and controls debtor's operation is seeking new financing for debtor. To obtain new financing he anticipates he will be required to supply a first mortgage upon the debtor's real property to the financing institution; existing mortgages on the real property either are of a present modest balance and will be paid off, or will be subordinated in the case of the $5 million note of which Dr. Segarra has a 13% participation—Dr. Segarra has not consented to subordination.

The first of debtor's objections relates to the authorization for execution of the mortgage upon the debtor's real property in 1975; debtor alleges that the Articles require five directors, but that only three directors were present at the meeting of the Board. Article EIGHTH (2)(f) of the debtor's articles of incorporation provides that any resolution or decision of the Board of Directors shall require the assent of a majority of not less than five directors. Article EIGHTH (1) provides that the number of directors "in no case shall be number be (sic) less than eight."

Ex. 4 is a copy of the minutes of the Board of a meeting held Jan. 29, 1975; there appear to have been 7 directors at this meeting which discussed a sale, but apparently resolved nothing in a final manner.

Ex. 5 is minute of a meeting of the stockholders held March 31, 1975 at which there were present 13 stockholders. At this meeting, the then President and Secretary of the debtor were authorized to sign the Purchase Agreement between debtor and San Carlos Planning, the purchaser.

Ex. 6 is the minutes of a meeting of the stockholders held May 28, 1975 at which there were present 14 stockholders. This meeting unanimously approved the offer of San Carlos Planning and the sale of the shares of stock of debtor.

On June 25, 1975, the Board held another meeting and adopted a resolution (Ex. 2) authorizing its President (who was listed as

---

**1.** See Ex. A—the report of auditors Harris, Kerr, Forster and Company as of 12/31/74 and 12/31/75.

now being Mr. Kanbar) to execute a bearer note of $3 million with interest at 8% and other conditions as appear in a mortgage executed the same day, and ratifying the appearance of Mr. Kanbar on behalf of the debtor. The resolution also authorized and ratified Mr. Kanbar's acts in executing promissory notes to 12 doctors, a promissory note of $23,081.52 to the order of San Carlos Medical Group, and one of $6,250 in favor of Dr. José Milton Soltero. Finally the resolution authorized the offer of the $3 million note "to serve as collateral for the debt of San Carlos Planning Corp. with the prior stockholders of Hospital General San Carlos, Inc." This resolution is signed by Terry Kanbar as Secretary of debtor. We have not been offered any minutes indicating the election of the new officers nor the minutes of the Board meeting at which the aforementioned resolution was adopted [2].

As part of Ex. 2, we have also received a copy of Deed No. 10 of June 25, 1975 executed before Notary Jorge Luis Suárez by debtor; this is the deed by which a mortgage was created on debtor's real property to guaranty the $3 million bearer demand note. The debtor is the only party to the mortgage, and by paragraph SIXTEEN of the deed it is provided that "The holder of the mortgage shall subordinate this note to a mortgage to be constituted in the future for the purpose of raising additional funds to be used exclusively for the expansion of the structure and improvement of the real estate that is covered by this mortgage. Any subordination other than the one mentioned above shall not exceed seventy-five percent (75%) of the cost of any improvement or construction."

The mortgage created was a third mortgage on debtor's realty. No evidence has been offered of its recordation nor of the pledge of the mortgage note, but they have not been challenged either.

As Dr. Segarra attached no documentation to his claim, we use the documents offered as exhibits and referred to above, these, as indicated, are either incomplete or inadequate.

While the corporate articles require a majority of five directors, the only meaningful minutes are those of the stockholders where a clear majority was present and authorized the execution for debtor by its officers as of March 31, 1975. In any event, if all the stockholders of debtor shared in and benefited by the acts authorized in 1975 (and have not as stockholders challenged them to date), we believe it may be assumed for our present purpose that the debtor's acts were approved by all stockholders; the corporation law of Puerto Rico recognizes that a corporation may act through the unanimous consent of its stockholders as an alternative to a vote at a stockholders meeting. 14 LPRA 1715. What the evidence before us does not support is a finding that the debtor corporation duly authorized the execution of the mortgage itself, or that the mortgage note was duly pledged as collateral to guaranty the balance owed to the stockholders for their stock. The law of Puerto Rico establishes that the mere execution of such a mortgage does not create a secured obligation and when the note is delivered the lien is only equivalent to the amount owed. Furthermore, the law of Puerto Rico has long held that the pledge of such bearer notes as collateral to be valid as against third parties must be by way of an authentic, or notarized document. See our opinion entered March 1, 1984, and the cases cited therein, in Adversary B–82–0835, *Haydar v. Méndez*, (Bankruptcy No. B–82–0030).

Debtor's second objection alleges that the execution of the mortgage in 1975 benefited only debtor's directors and stockholders and that debtor received no consideration or benefit. Clearly the execution of a mortgage by an insolvent corporation with large operating losses upon its major assets for the purposes of insuring that its stockholders receive the selling price of their stock, to say the least, smells of fraud

---

**2.** Minute No. 185 is missing from the minute book (Ex. 7) and could be the minute of the June 25, 1975 meeting.

upon the corporation's unsecured creditors. In the scale of equitable priorities, unsecured creditors enjoy a better right to the assets of a corporation than do stockholders, and mortgages such as the one we here deal with have long been voidable in bankruptcy as fraudulent as to creditors. See Sec. 67(d)(2) of the Bankruptcy Act of 1898, as amended; Sec. 548(a) of the Bankruptcy Reform Act of 1978; Sec. 4 of the Uniform Fraudulent Conveyances Act; or the 1570 Statute of Fraudulent Conveyance of 13 Elizabeth, C.5.

The debtor-in-possession in a Chapter XI case, such as the present, has the title and exercises all the powers of a bankruptcy trustee. Sec. 342. Unfortunately, the trustee's right to annul a fraudulent transfer under Sec. 67(d)(2) is limited to those incurred by a debtor within one year prior to the filing of the bankruptcy petition initiating the case. The present case was filed Oct. 8, 1976, and the mortgage in question was executed June 25, 1975, that is, more than one year prior to the bankruptcy filing. We conclude that we cannot void the 1975 transfer by way of the mortgage under this Section of the Act. No other section has been suggested to us (in fact, Sec. 67(d) was not suggested), but we sit as a court both of law and equity, Sec. 2(a) and Sec. 57(k), and equity suffers not a right without a remedy. *Graselli Chemical Co. vs. Aetna Explosives Co.*, 252 F. 456. (CA2 1918).

In *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281, Justice Douglas said:

"The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not present substantial justice from being done. By reason of the express provisions of # 2 these equitable powers are to be exercised on the allowance of claims, a conclusion which is fortified by # 57, sub. k, ... For

certainly if, as provided in the latter section, a claim which has been allowed may be later 'rejected in whole or in part, according to the equities of the case', disallowance or subordination in light of equitable considerations may originally be made.

"That equitable power also exists in passing on claims presented by an officer, director or stockholder ... Its disallowance or subordination may be necessitated by certain cardinal principles of equity jurisprudence ... A directory is a fiduciary ... So is a dominant or controlling stockholder or a group of stockholders ... that fiduciary obligation is, in the event of bankruptcy of the corporation, enforceable by the trustee. For the standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders.

"As we have said, the bankruptcy courts in passing on the allowance of claims sits as a court of equity. Hence these rules governing the fiduciary responsibilities of directors and stockholders come into play on allowance of their claims in bankruptcy."

The mortgage of 1975 benefitted the then stockholders of the debtor and no one else; the purchaser of the stock did not benefit from the mortgage—that which it had purchased was worth less as a result; the debtor did not benefit from the mortgage of its realty to guaranty a debt owed by the purchaser; nor did the debtor's creditors benefit from the mortgage for they got nothing and by the mortgage a valuable asset of the debtor was removed from the creditors' reach. Dr. Segarra as a stockholder has the burden to prove not only the good faith of the transfer but also its inherent fairness from the viewpoint of the corporation and others interested therein. *Matter of Mobile Steel Co.*, 563 F.2d 692 (CA–5, 1977). We find this transfer was unfair to everyone but the stockholders. To argue that the debtor's and the creditors' future was enhanced by the sale of the stock has not been shown to be the case by the history of this case, and besides

is subjective rationalization which does not merit our consideration.

Even if the mortgage herein were validly authorized and the mortgage note duly pledged in accordance with the laws of Puerto Rico, we would conclude that the transaction whereby the stockholders acquired a mortgage on debtor's realty was inequitable as to the debtor's creditors. Under these circumstances, we have two alternatives—to disallow the claim or to vary the order of payment of the claim. 3A *Collier on Bankruptcy*, 14th Ed., ## 63.08, 65–06; 1A BKR.L.Ed. # 7.62.

To disallow the claim would be inequitable to this creditor for, we understand all of the other stockholders have resold or transferred their reacquired stock interest to Dr. José Alvarez. The inequities do not weigh heavier as to Dr. Segarra than they do as to the other stockholders who likewise benefited[3]. We, therefore, believe that the proper equitable treatment of this claim is to subordinate its payment to the payment of debtor's general creditors. In so determining, we take into consideration that debtor has only challenged the claim of Dr. Segarra to be a secured creditor, but not the debt, and that once the general creditors have been paid it is of no concern to them whether debtor goes on to pay its ex-stockholders or their successors. We also take into consideration the subordination clause in the mortgage deed.

Specifically, we conclude and decide that Claim # 4 of Dr. Victor Segarra for the purpose of this case shall be allowed as claimed but that any payment on this claim shall be withheld and postponed until all general creditors have been paid in full.

SO ORDERED.

San Juan, Puerto Rico, this 22nd day of May, 1984.

/s/ W.H. Beckerleg
W.H. BECKERLEG
U.S. Bankruptcy Judge

[3]. The debtor is directed to examine *all* claims and to take appropriate action in the light of this opinion.

EXHIBIT B

In the United States Bankruptcy Court

for the District of Puerto Rico

B–76–279(B)

Chapter XI

In re: Hospital General San Carlos, Inc., Debtor

*ORDER*

Filed Jan. 24, 1985

We have before us a number of pleadings related to or arising out of an order of May 22, 1984, (reaffirmed on June 25, 1984 and now on appeal) by which we allowed Claim # 4 of Dr. Victor Segarra but postponed payment until all general creditors had been paid in full; the relationship, in some instances, is peripheral in that it sometimes seems that whatever the debtor or this creditor request or propose, the other opposes, and as there are presently no other creditors active in this case one tends to view this case solely as a problem between these two parties. That is not the true picture, of course, for this is a Chapter XI case that has been before this court for almost 8 years and this is but the latest skirmish of debtor with a variety of foe.

The present posture of the case is that debtor has requested authorization to make a substantial loan secured with a real estate mortgage upon realty of the debtor; Dr. Segarra's claim # 4, although subordinated to general creditors by our order of May 22, 1984, is guaranteed by a mortgage on this same realty, and debtor has moved to subordinate Dr. Segarra's mortgage to the proposed loan, apparently a pre-condition of the bank before they will disburse; Dr. Segarra is not willing to have his obligation further subordinated.

Various hearings have been held on debtor's motion to further subordinate Dr. Segarra's claim, and these we have continued from time to time on the premise that as Dr. Segarra was the creditor who would be most affected by the proposed action, and

as the only creditor actively opposing same, it was proper that he be provided adequate information so that he might make an informed judgment as to debtor's proposal and, if not in accord, that he be placed in a position that would permit an informed response. While it may be overreaching to cast this creditor in the light of a representative of all creditors, he does oppose the relief requested, no other creditors have come forward, the amount the debtor wants to borrow is 2.5 million, and the court needs to be informed on the propriety, legality, and desirability of the contemplated action—in a bankruptcy context, the self-interest of even one creditor can assist the court to obtain a fuller perspective of the problem.

The discovery of the adequate information has proceeded, albeit with difficulties, but in general towards the intended goal; however, two other issues have arisen.

First, the debtor on December 13, 1984 has moved for reconsideration of our order of May 22, 1984, has requested that Dr. Segarra's Claim No. 4 be considered as null and void.

Second, on December 26, 1984, Dr. Segarra moved for dismissal of the debtor's Chapter XI case, or for the appointment of a trustee. (This motion was amended on January 3, and 14, 1985.)

By this order, we expect to dispose of a number of motions filed by the parties which, as we stated, arose out of or are related to the controversies between these parties [1]. The various motions requesting or opposing hearings, or requesting they be expedited or continued have been disposed of in open court or by the passage of time, and we consider that none are pending. A hearing has been scheduled and notified to the parties in open court for February 1, 1985 at 9:00 A.M.; on this date we will hear the following motions which, as of date, are the only ones we consider yet pending:

1. Debtor's motion of August 27, 1984 for permission to mortgage as amended by its motion of December 13, 1984.
2. Debtor's motion under Sec. 364.
3. Opposition of Segarra, as amended, to above motion of debtor.

We hereby deny debtor's motion for reconsideration of our order of May 22, 1984. That order is on appeal before the United States District Court for the District of Puerto Rico, Hon. Raymond L. Acosta, Civil No. 84–2417 RLA. The filing of a timely notice of appeal divests us of jurisdiction with respect to the matter except to aid the appeal or correct clerical errors. Our order of May 22, 1984, held Claim No. 4 to be a valid claim secured by a mortgage upon property of the estate, but subject to subordination to the general creditors of the estate upon equitable grounds. The motion to reconsider that order presents further challenges to claim under Sec. 67 and 70 of the Bankruptcy Act of 1898 on the ground that the mortgage is an unperfected lien based on a fraudulent claim. While the order of May 22, 1984 was an order "allowing or disallowing" a claim, and while Sec. 57(k) of the 1898 Act apparently permits reconsideration of such an order at any time prior to the closing of the estate (which has not occurred), the present motion, if considered, would result at present in the District Court hearing an appeal of an order that allowed a claim as secured while the secured status of the claim was being challenged before us; even assuming jurisdiction on our part, this would not be an efficient use of judicial manpower. In denying debtor's motion for reconsideration, we do not rule on whether it is timely, procedurally sound, or meritorious; we simply hold we have no jurisdiction to consider same.

The motion of Dr. Segarra to dismiss the case (or to appoint a trustee) is a motion which, under Bankruptcy Rule 2002(a) can

1. The pending motions which are disposed of by this order are the following:

| Date | Moving Party | Short Title |
|------|-------------|-------------|
| 12/13/84 | Debtor | Reconsideration of Claim No. 4 |
| 12/26/84 | Dr. Segarra | Opposition of debtor to Reconsideration |

only be heard upon 120 day notice to all creditors. The Clerk of the court shall set and duly notify a hearing on said motion.

San Juan, Puerto Rico, this 23rd day of January, 1985.

/s/ W.H. Beckerleg
W.H. BECKERLEG
U.S. Bankruptcy Judge