(61 App. Div. 315.)

## FARMERS' & MECHANICS' BANK v. SMITH.

(Supreme Court, Appellate Division, Third Department. May 8, 1901.)

1. MORTGAGE—DEED ABSOLUTE IN FORM—EVIDENCE—EQUITY.
    Where a deed absolute on its face is in fact given as security, and intended as a mortgage, such intent may be shown by parol or other extrinsic evidence, and, when shown, effect will be given to the intent of the parties, though there be no defeasance in writing.

2. SAME—BURDEN OF PROOF.
    Where it is sought to show by parol that a deed absolute in form is in fact a mortgage, the evidence must be clear and conclusive, and establish the oral defeasance beyond a reasonable doubt.

**3. SAME—EVIDENCE.**
A merchant indebted to a banker executed deeds in form absolutely conveying his lands to the banker. For several years after the conveyances the merchant remained in possession of the lands, and erected extensive improvements thereon, and it did not appear that the banker ever took possession. The banker rediscounted certain notes of the merchant with the plaintiff, and stated to plaintiff that the notes were amply secured by a mortgage on all the merchant's real estate. The banker's cashier also wrote plaintiff that the loan was secured by real estate. The banker had no such mortgage or security, unless such deeds were mortgages. *Held* that, the banker being dead, in an action against his executor and heirs such deeds should be found to be intended as mortgages to secure the merchant's notes, and were subject to foreclosure as such.

Appeal from special term, Chemung county.

Action by the Farmers' & Mechanics' Bank against Alice Pomeroy Smith and others, to foreclose absolute deeds as mortgages. From judgment dismissing the complaint, the plaintiff appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Reynolds, Stanchfield & Collin (Frederick Collin, of counsel), for appellant.

A. C. & J. P. Eustace, for respondent.

EDWARDS, J. On December 18, 1891, John McNaney made his promissory note for $3,406.85, dated at Elmira, N. Y., payable four months after date to the order of himself, at the Farmers' & Mechanics' Bank, with interest. This note, indorsed by the maker and also by E. J. McNaney and by John H. McNaney, was thereupon discounted for the maker by the Farmers' & Mechanics' Bank, and was thereafter, and before maturity, indorsed by Lewis M. Smith, and by him, for value, delivered to, and rediscounted by, the plaintiff. The note was renewed from time to time, until January 24, 1898, when the last note in renewal was made, dated that day, for $3,500, indorsed, discounted, and rediscounted similarly to the first, which note, at maturity, was protested for nonpayment, and is held by the plaintiff. On February 2, 1892, John McNaney made two other notes, one for $2,000, and the other for $1,000, dated on that day, each payable three months after date, to the order of himself, with interest, which notes were indorsed by the said John McNaney, by E. J. McNaney, and by John H. McNaney, and discounted for the maker by the Farmers' & Mechanics' Bank, and were thereafter indorsed by Lewis M. Smith, and by him delivered to, and rediscounted by, the plaintiff. At their maturity these two notes were consolidated, and a single note for $3,000 was given in renewal, made, indorsed, discounted, and rediscounted as before, which said last note was thereafter from time to time renewed, until December 13, 1897, when the last of such renewal notes for $3,000 so made, indorsed, and discounted, was delivered to, and rediscounted by, the plaintiff, which note was, at maturity, duly protested for nonpayment, and is held by the plaintiff. Since some time prior to 1891, and until his death, on March 2, 1898, Lewis M. Smith conducted a banking business in Elmira, N. Y., under the name of Farmers' & Mechanics' Bank, and during that period John McNaney was engaged in busi-

ness in that city, and was a customer of Smith's bank. On April 7, 1892, by an instrument in form a warranty deed, McNaney and wife conveyed to Smith, in consideration of $2,225, lots Nos. 1, 2, 3, 4, 5, 6, 8, 9, and 12, in block No. 3, as laid down on a map of the Diven-Rathbun Block, in the city of Elmira; and also, on May 27, 1892, by an instrument in form a warranty deed, McNaney and wife conveyed to Smith, in consideration of $2,750, lots known as 208 and 210 West Hudson street, in the city of Elmira. This action is brought to have these two deeds adjudged to be mortgages, given for the purpose of securing the notes held by the plaintiff, and for the foreclosure of the mortgages to satisfy the indebtedness. The learned trial court was of opinion that the evidence adduced on the trial was insufficient to establish the fact that the deeds in question were intended as mortgages, and for that reason made a decision dismissing the complaint.

It is well settled that "a deed absolute upon its face may, in equity, be shown, by parol or other extrinsic evidence, to have been intended as a mortgage." A defeasance in writing is not essential, and courts will look beyond the form of the instrument, and give to it the effect intended by the parties. Horn v. Keteltas, 46 N. Y. 605; Barry v. Colville, 129 N. Y. 302, 29 N. E. 307; Burnett v. Wright, 135 N. Y. 543, 32 N. E. 253. It is also the rule that an oral defeasance must be established by "clear and conclusive evidence," —must be established "beyond a reasonable doubt." Ensign v. Ensign, 120 N. Y. 655, 24 N. E. 942. There is no rule requiring what is sometimes termed "direct evidence," in the sense that there must be testimony of a witness to a specific agreement between the parties that the deed shall be held merely as security for a loan. Such agreement may be established by extrinsic facts, which often speak more unerringly than human lips. The rule relates only to the probative force of the evidence required, and, when this is such as to convince the judgment beyond a reasonable doubt, the reason of the rule is satisfied.

At the time of the trial, Smith, the grantee in the two deeds, was dead, and there was no testimony given as to a particular oral agreement between him and McNaney, but there were several extrinsic facts established, and declarations of Smith and of his cashier proven, all of which, I think, lead to the one conclusion that the instruments in question were designed to be mortgages only. The premises conveyed by McNaney to Smith by the deed dated April 7, 1892, are the same as were conveyed to McNaney by Rathbun and by Diven by two separate deeds, the one dated March 8, 1892, and the other March 19, 1892. The deed from McNaney to Smith expressed the same consideration as was expressed in the deeds of Rathbun and Diven to McNaney, and the three deeds were all recorded on April 8, 1892. In the deed of McNaney to Smith the covenant of quiet enjoyment is stricken out, and in its stead is inserted a covenant that McNaney is seised of the premises in fee simple, and has good right to convey the same.

At the time of this conveyance, the grantee, Smith, was doing business as a private banker, under the name of Farmers' & Mechanics'

Bank, and the grantor, McNaney, was a debtor to the bank. From the year 1887, McNaney's indebtedness seems to have been gradually increasing, so that in 1892 it was double what it was in 1887, and in March, 1894, his indebtedness or liability to Smith amounted to $47,-670.48. On the premises at the time of the deed to Smith there were three buildings, consisting of a dwelling house, a barn, and a meat market. After the deed to Smith, on April 7, 1892, McNaney, until 1895, rented the property, collected the rents, repaired the buildings, made improvements, changed the meat market over into a saloon, paid the taxes, and exercised all the usual acts of ownership over the property. How or by whom the property was managed subsequently to 1895 is not disclosed in the evidence. Of this apparent continuance of ownership by McNaney after the execution of his deed to Smith there is no explanation in the evidence. Such acts are inconsistent with the theory that the deed to Smith was intended to be an absolute conveyance. While they alone are not conclusive evidence that only a security was intended, they have, when unexplained, ever been regarded by courts as evidence of a strong character.

The declarations of Smith, made to the plaintiff in March, 1894, and the statement of Smith's cashier, made in February, 1898, when they were called upon to speak the truth in regard to the notes held by the plaintiff, show that the deed of April 7th and the one of May 27th were held by Smith as mortgages to secure the notes owned by the plaintiff. Ferris, who had been for 10 or 12 years assistant cashier of the plaintiff, testifies that in the month of March, 1894, while the plaintiff was owning the notes of which those now held by it are renewals, he had a conversation with Smith relative to these notes and the security, and Smith then told him that "he [Smith] held a mortgage on all the real estate of John McNaney for the securing of these notes." Ferris further testifies: "I told him I had been informed that McNaney was very much involved; that I felt a little uneasy about the loan; that it was a large loan, and had been running a good while; and he [Smith] said it was amply secured by a mortgage on all the real estate of John McNaney, and that he held the mortgage." Smith must be presumed at that time to have spoken what he believed to be the truth, and I think it clear from the evidence that in speaking of the mortgage security held by him he had in mind and referred to these two deeds.

The record shows that only one mortgage in form was ever given by McNaney to Smith. This was dated July 12, 1886, was for $1,800, on lots Nos. 16 and 17, in block No. 6, of the Catharine Sly farm, and was satisfied of record July 2, 1889, five years prior to the time of the conversation between Ferris and Smith, and Smith clearly could not have referred to that mortgage. Nor is it reasonable to believe that Smith had reference to a deed dated October 19, 1887, by McNaney and wife to him, of the lots Nos. 16 and 17, on block No. 6, of the Catharine Sly farm, the same premises on which the $1,800 mortgage mentioned had been given. The evidence disclosed the fact that this deed of October 19, 1887, was, in fact, a mortgage. A defeasance, never recorded, and found among Smith's

papers after his death, in 1898, executed by Smith, dated October 19, 1887, recited the execution and delivery to Smith, that day, of this deed by McNaney, and contained the covenant "that if the said John McNaney shall hereafter, at any time within three months after due demand made of him therefor, pay, or cause to be paid, to said Lewis M. Smith, all sums of money then owing by him to said Smith, and all indebtedness of every name and nature, whether now held, or hereafter acquired and held, by the said Smith, and all sums due for interest on any indebtedness then held or owned by the said Smith, and owing by the said McNaney, and also any and all sums then due or to become due which the said Smith may be liable to pay in any way whatever, as indorser or otherwise, then, and in that event, the said Lewis M. Smith will reconvey to the said John McNaney the premises conveyed to said Smith this day." What the value of these premises is does not appear in the evidence, but, as they were previously mortgaged by McNaney to Smith for $1,800, it is not an unreasonable inference, under all the circumstances, that their value did not largely exceed that sum. It does, however, appear that they were but a part of the property, and I think it may fairly be inferred the less important part, which was on June 14, 1889, mortgaged by McNaney to the Mutual Life Insurance Company for $12,000, and which mortgage was subsequently foreclosed, and the premises bid in by the mortgagee for less than the mortgage. This deed of October 19, 1887, is the only one where, so far as is disclosed by the record, a written defeasance was ever executed by Smith, and it is hardly conceivable that in Smith's statement to Ferris in March, 1894, he could have truthfully referred to that deed as ample security, as it is conceded that McNaney's indebtedness or liability to Smith on commercial paper was at that time $47,670.48, and the defeasance executed on October 19, 1887, shows that the deed of that date to Smith was taken and held as security, not only for all existing, but for all future, indebtedness or liability of McNaney to Smith.

That these two deeds were held by Smith as security for the notes of McNaney owned by the plaintiff is further evidenced by the letter of Dodson, dated February 5, 1898, to Ferris, the cashier of the plaintiff. Dodson was the cashier of Smith at the time of writing this letter, had the general management of Smith's business, and, as he says, acted "in the same capacity as though he [Smith] had been there himself." In this letter he says with regard to the McNaney notes held by the plaintiff: "This paper will be reduced as it falls due. Mr. Smith is secured by real estate on this loan." Dodson testified, when interrogated with regard to the contents of this letter, that he did not know of any securities Mr. Smith held other than these two deeds in question. I think it is a reasonable inference that when Dodson, who presumably had knowledge of what he wrote, spoke of security for this loan, he had reference to the two deeds in question. The deed of May 27, 1892, of the Hudson street property, from McNaney to Smith, is dated on the same day as the deed of the same property from Baldwin to McNaney, and the consideration expressed in each is the same. Both deeds

are recorded on April 6, 1898, over a month after the death of Smith, and were undoubtedly so recorded by his personal representative. On this property a barn was erected by McNaney after the conveyance by him to Smith. In regard to this property, an effort was made by the defendant's counsel to show that Smith paid the purchase price to McNaney. No attempt was made by him to prove payment for the conveyance of April 7th. Such evidence consisted of two checks of McNaney on the Farmers' & Mechanics' Bank, dated May 27, 1892, each payable to E. J. Baldwin or order, one for $1,864, and the other for $861. At the bottom of the first check is written, "Purchase price, with another ck., $861." On the other, "Purchase price, with another ck. of $1,864." These checks were both indorsed by Baldwin, and were paid by Smith, who was the Farmers' & Mechanics' Bank, on May 28, 1892. Two months thereafter, on July 27, 1892, Smith gave his two checks on the Farmers' & Mechanics' Bank for precisely the same amounts as these two checks of McNaney, and on July 28th McNaney's account with the Farmers' & Mechanics' Bank was credited with these checks. One of them was written, "Pay check J. McNaney, given to E. J. Baldwin, May 27th, '92, $1,864;" the other, "Pay J. McNaney to pay check given to E. J. Baldwin, May 27th, $861." At the bottom of each of these checks is written, "Hudson St. property, stable," etc. On May 27th McNaney's bank account with Smith was overdrawn $851.57. On May 28th there was an overdraft of $3,579.77, which includes these two checks of $861 and $1,864, given by McNaney to Baldwin, and paid by the Farmers' & Mechanics' Bank on that day. The precise significance of these transactions is intelligible only to one familiar with the unique methods of McNaney and Smith; but it is quite as probable that the checks of July 27th were drawn by Smith to pay McNaney's overdraft, caused by his checks to Baldwin, as that they were given in payment for the property.

The relation of debtor and creditor between McNaney and Smith, the amount of the indebtedness, the circumstances attending the execution of the deeds, the exercise of acts of ownership by the grantor after the conveyances, the declarations of Smith and of his cashier, all, in my opinion, clearly point to but one conclusion, and produce the conviction that the deeds in question were designed as security for the debt of McNaney held by the plaintiff.

I think that the learned trial court erred in the application of the rule of evidence, correctly stated by him, through a misapprehension of some of the facts in this case. In his decision the court refers to the deed of October 19, 1887, from McNaney to Smith, with a separate written defeasance, and says: "The property described in the above-mentioned conveyance and agreement was subject to a mortgage of $12,000 held by the Mutual Life Insurance Co., and was considered worth from $26,000 to $30,000, with a rental value of $2,400 per annum." The court further says: "It is undisputed that Smith did hold as security a deed which was, in legal effect, a mortgage covering property that produced an income of $2,400 per annum. Whether this security was 'ample' might well be matter of opinion."

The court evidently was of the impression that the property in the deed of October 19, 1887, was the same as that embraced within the mortgage which produced an annual income of $2,400, and from this erroneous impression deduces a conclusion that the statement made to Ferris in March, 1894, by Smith, that he was amply secured by mortgage on all the real estate of John McNaney, might well be matter of opinion. The fact is that the property covered by the deed of October 19, 1887, is but a part of that embraced within the $12,000 mortgage held by the Mutual Life Insurance Company, and I think it fairly inferable that it was in value but a small part. The indebtedness and liability for which the deed of October 19, 1887, was held as security amounted, when the statement of Smith to Ferris was made, to over $47,000, and the entire property covered by the $12,000 mortgage was bid in by the mortgagee at foreclosure sale in 1898 for less than the mortgage. The property included in the mortgage of June 14. 1889, to the Mutual Life Insurance Company, of which that covered by deed of October 19, 1887, was a part only, was by quitclaim deed, dated July 2, 1889, conveyed by McNaney and wife to Smith, but there does not appear to have been any defeasance in writing given back by the grantee on the execution of this deed, and the court could not have referred to this as an "undisputed" mortgage. The facts no more justify the inference that that deed was a mortgage than those of April 7th and May 27th.

The court further said in his decision: "After which time Dodson, as agent of the grantee, Smith, took charge of the property." The court here was speaking of the property covered by the deed of April 7, 1892, over which McNaney exercised ownership until 1895. There is no evidence that Dodson, as agent of the grantee, took charge of the property after 1895. Who managed it does not appear. The trial court says: "The evidence develops that, during the years between 1887 and 1898, McNaney conveyed to Smith several other pieces of property, which it is not claimed were other than absolute sales." The record discloses two other deeds than those herein mentioned from McNaney to Smith, one of which was dated April 27, 1889, prior to the making of the notes held by plaintiff, conveying property on Erie street for $700, and the other dated March 28, 1892, in consideration of $2,200, of property on Columbia street. No evidence in respect to their character, aside from what appears upon their face, was offered on either side, and there was no admission nor concession in respect to them. The omission of the plaintiff of any attempt to show that they also were intended to secure the indebtedness of McNaney to Smith cannot affect its claim in respect to the deeds in question.

In examining the record of this case, there arises an impression that there are, perhaps, facts concealed which would shed as much light on the transactions between Smith and McNaney as those revealed, but sufficient has been established to produce a decided conviction that the deeds in question were intended as mortgages, and as such should be enforced.

The judgment should be reversed on the law and the facts, and new trial granted, with costs to the appellant to abide the event. All concur except Smith, J., not voting.