HENRY F. LADE, Plaintiff, *v.* CLARA C. THOMAS, Individually, and as Administratrix of the Estate of O'RYAN F. THOMAS et al., Defendants.

(Supreme Court, Monroe Equity Term, July, 1919.)

Deeds — when deed will be construed as a mortgage.

> Where the value of real property is out of all proportion to the consideration recited in a deed thereof, and in connection with other facts and circumstances the court is satisfied that equity requires that the deed be construed as a mortgage, it will be so decreed.

ACTION to have a deed declared a mortgage and for an accounting.

Chamberlain & Page (Philetus Chamberlain, of counsel), for plaintiff.

O'Brien & Powell (R. R. B. Powell, of counsel), for defendant.

RODENBECK, J. The dominating and irresistible fact that stands out in this case is the difference between

the value of the property at the time of its transfer by Lade to Thomas and the consideration advanced by Thomas. The property at that time was worth about $12,000 and the total consideration agreed to be advanced by Thomas was $4,127.03. Reasonable persons are not disposing of property upon any such terms as that, and when such an agreement is made, as in this case, it naturally creates a suspicion that there was something involved in the transaction besides a mere conveyance. Lade had inherited the property from his father and had purchased his sister's interest. He had lived upon the farm for upwards of forty years and it is not reasonable to suppose that he was willing to transfer the property to Thomas merely upon the payment of the mortgages against the property and the debts outstanding against himself. The inadequacy alone of the consideration, however, is not sufficient to set aside the transfer for the courts have nothing to do with the adequacy of the consideration of a contract if the contract is fairly made between persons competent to contract. The parties and not the courts are judges of the adequacy of the consideration of a contract but there are other elements, aside from mere inadequacy, which in this instance support a conclusion that the parties did not intend an absolute sale. The mortgages against the property amounted to $3,300. Thomas did not pay these mortgages out of his own funds but out of moneys that he later raised by placing another mortgage upon the property after he had acquired an apparently absolute deed from Lade. Thomas therefore paid Lade's mortgages out of moneys which he raised from mortgages on Lade's land. He really paid Lade's obligations with the latter's own money. Lade could have done that just as well as Thomas. When the transaction was completed there was a mortgage against the prop-

erty placed by Thomas which equalled not only the mortgages which existed at the time that the deed was given but also the additional moneys advanced by Thomas to pay other indebtedness of Lade. Thomas in fact paid Lade but $800 and for this $800 he was reimbursed out of the moneys realized from the mortgage placed on the property after he obtained the deed. Two thousand dollars additional he secured by a second mortgage. This account of the financial transactions involved in this case does not strike a disinterested observer as fair and honest and creates in the mind in connection with the inadequacy of the consideration, a suspicion that the transaction was not an absolute sale. To support the latter view there is the testimony of Brown, a reputable attorney, whose evidence has not been impeached in any way, that prior to the execution of the deed Thomas said to him that he was going to pay Lade's obligations and take a deed as security and after the transaction had been completed and the deed delivered, that he had taken the deed as security. Tierney said that he heard Thomas say that the deed was to be taken as collateral security. Thomas also admitted to Zarpentine that the deed was only intended as security and that Lade was to have an opportunity to pay him back. In the presence of his own attorney Thomas said that he was going to pay up Lade's debts and take the farm. The latter language may be open to two constructions but in the light of the surrounding circumstances it looks as though Thomas had not told the full story to his attorney but was keeping back the real transaction for purposes of his own. The outcome was that when Thomas died he had a deed of the property with two mortgages on it aggregating $6,500 with the proceeds of which he had met all of the obligations of Lade which he agreed to pay

and had $2,000 in addition to the property for his own use and Lade was a tenant on shares on the property under a written lease running for one year. Is it conceivable that a reasonable person would dispose of his property upon such terms? Is it not more reasonable to conclude that the agreement claimed by Lade actually existed, namely, that Thomas was to pay Lade's obligations and take a deed as security so that the deed while absolute in form, was merely a mortgage to protect Thomas in his advancements? It is not an unusual thing for one man to have such confidence in another as to convey property to him absolutely under a private agreement between them that the conveyance shall not be an absolute one. Lade's silence after the transaction was consummated is not such a strong factor as to warrant the court in disregarding the evidence sustaining the contention of the plaintiff. Lade was described as a drinking man and one of the daughters of Thomas had been his housekeeper. Thomas was a man of business experience and it is not surprising that he should succeed in prevailing upon Lade to give him an absolute deed, when a mortgage would have answered all the purposes, upon the representation that it should be considered as security and not as an absolute deed. Lade would not know what his remedy was under these circumstances and when Thomas's representatives began to talk about selling the farm it is not surprising in the light of his character that Lade should not have asserted immediately his legal rights and called attention to the agreement affecting the absolute character of the deed. The whole transaction, the making of the deed, the lease and the two mortgages all occurred within a year. It does not appear that Lade knew that other mortgages had been placed upon the property. As against the claim, however, that he did not assert

his rights in the property, Lade claims that he did insist that he had the first claim on the property, indicating that he claimed some interest under the deed which he had given. The receipt that Thomas had Lade sign for the moneys which Thomas was to advance contains an acknowledgment that Thomas had " complied with the terms of the deed of October 23, 1917 * * * by assuming and paying all the following items." What were the terms referred to? They were evidently terms that Thomas and Lade had in mind which are not expressed in the deed. The whole atmosphere of the case shows that there was something wrong about the transaction between Lade and Thomas considered as an absolute transfer of the farm to Thomas. There should be an accounting between the parties. The rules of evidence seem to require that the conscience of the court should be satisfied by very strong evidence, but with those rules in mind the court is satisfied that the deed in question was not an absolute deed but was given as security to protect Thomas in the payment of any obligations of Lade.

Ordered accordingly.