In the Matter of 716 THIRD AVENUE HOLDING CORP., Bankrupt.

Jeremiah F. CROSS, Trustee-Appellant,

v.

A. G. V. ASSOCIATES, INC., Respondent-Appellee.

No. 52, Docket 28860.

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1964.

Decided Dec. 31, 1964.

N.Y.1964). We reverse and remand for rehearing by the Referee.

The Bankrupt, 716 Third Avenue Holding Corp., was a realty corporation whose sole asset in 1962 consisted of a thirty-three year lease[1] of a building containing two stores and a restaurant at Third Avenue and 45th Street in New York City. The restaurant was occupied by the Two Johns Restaurant Corp. which was experiencing serious financial difficulty. Two Johns owed the Bankrupt approximately $20,000 in rent, and its imminent collapse threatened the Bankrupt with the loss of the major portion of its rental income under the subleases and, in consequence, the possible forfeiture of the leasehold to the fee owner.

On May 12, 1962 the Bankrupt agreed in writing to assign the entire leasehold to Varveris Inc. in return for $22,000 and to use the proceeds as follows: $4500 for delinquent real estate taxes on the property; $1000 for the May rent owed by the Bankrupt to the fee owner; $2500 for attorneys' fees, including those of the assignee's attorney; $5000 to pay the conditional sales obligations of the Two Johns; $3000 to provide additional security for the fee owner; and the remaining $6000 for the Bankrupt's use. The agreement contained an option, to run for a period of nine months from the date of the assignment, under which the Bankrupt could repurchase the leasehold for $17,800 plus 6% interest. If this right were in fact exercised, it was agreed that the assignee would account for any profits received during the period but all losses incurred would be added to the repurchase price.

The only other provision of the agreement which is of significance on this appeal is the strong sanction imposed upon the assignee if, during the option period, it allowed to remain unpaid for twenty days either the rent due to the owner of the land and building or the taxes on the leased premises. If either

Jacob Oliner, New York City, for trustee-appellant.

Samuel Newfield, New York City (Bernard Finkel, New York City, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The Trustee of the Bankrupt appeals from a judgment of the District Court which affirmed the dismissal by the Referee in Bankruptcy of the petition of the Trustee which sought a declaration that an assignment by the Bankrupt of a leasehold was null and void or, in the alternative, a declaration that the assignment was a mortgage, and a determination of the amount required for its redemption. 225 F.Supp. 268 (S.D.

1. § 290 (subdivision 1) of the New York Real Property Law provides: "The term 'real property,' as used in this article, includes lands, tenements and hereditaments and chattels real, except a lease for a term not exceeding three years."

of these events occurred, the assignee was to lose all of its interest in the lease and all "right to repayment" for the assignment. The reassignment, executed by the assignee and held in escrow pending exercise of the option, would, in the event of such default by the assignee, be delivered to the assignor.

Before the execution and delivery of the assignment Varveris transferred all of its rights under the agreement to the appellee, A. G. V. Associates, Inc. The agreement of May 12, 1962 was carried out on May 24, 1962 by the assignment of the leasehold to A. G. V., which contemporaneously executed a reassignment to the Bankrupt. Both instruments were delivered to A. G. V.'s attorneys to be held by them in escrow. On August 29, 1962 the assignment was recorded but the reassignment was not.

In the meantime, however, an involuntary petition in bankruptcy had been filed against 716 Third Avenue Holding Corp. and on December 28, 1962, it was adjudicated a bankrupt. A month later, and still within the nine-month period stipulated in the May agreement, the Trustee in Bankruptcy notified A. G. V. of his intention to repurchase the leasehold, but there was no tender of funds because the Trustee did not have on hand enough money to meet the repurchase price. On February 18, 1963, the Trustee initiated the proceedings which are the subject of this appeal.

There are four points raised by the appellant: (1) that it was error to hold the assignment of the leasehold to be an absolute sale because the evidence before the Referee clearly established that a mortgage transaction was involved; (2) that the recordation of the assignment was void under § 320 of the New York Real Property Law; (3) that the assignment was void under either § 16 or § 20 of the New York Stock Corporation Law, McKinney's Consol. Laws, c. 59, for want of the required stockholder consent; and (4) that the assignment was without fair consideration and rendered the Bankrupt insol-

vent, and therefore was a fraudulent conveyance.

The most important of these questions is the first, that is, whether or not the transaction was, what on its face it appeared to be, an assignment of a lease for a consideration of $22,000 with an option to repurchase within a nine months' period, or was instead a loan of $22,000 with the lease transferred to the lender for security pending repayment of the money advanced by the exercise of the so-called option. If the former, the option has expired, unexercised, and title to the lease has become absolute in the assignee. If the latter, title has not so vested, and the debtor has a right to redeem.

The appellee has argued that, because the option period under the agreement has expired, the appellant could no longer repurchase the lease in any event, but if the transaction is a mortgage, the redemption period is provided by law and cannot be abolished or limited by agreement or action of the parties. Conway's Executors and Devisees v. Alexander, 11 U.S. (7 Cranch) 218, 241, 3 L.Ed. 321 (1812); Mooney v. Byrne, 163 N.Y. 86, 57 N.E. 163 (1900).

The Referee found that there was no debt as a result of the assignment and the payment of the money and that, therefore, it was not a security transaction but an outright sale with an option to repurchase.

The District Court felt bound to affirm the Referee's order in the light of certain principles applicable to this kind of case: first, that the burden of proof is on the party asserting that a conveyance absolute in its terms is a mortgage, Charles T. Streeter Construction Co. v. Kenny, 209 App.Div. 697, 205 N.Y.S. 611 (1st Dept.1924); second, that he must sustain that burden by clear and convincing proof, Zivotosky v. Max, 190 Misc. 1044, 75 N.Y.S.2d 553 (Sup.Ct.1947), aff'd, 276 App.Div. 792, 92 N.Y.S.2d 631 (3rd Dept.1949); and third, that a finding by the Referee that the burden was not

sustained will be affirmed unless clearly erroneous, In re Madelaine, Inc., 164 F.2d 419 (2d Cir.1947).

There was a paucity of oral testimony directly on the nature and purpose of the transaction. The witness Vlahakis, president of the debtor, was apparently a difficult witness because of his limited understanding of English. He testified that the dealings of the parties were not a sale but a loan. The respondent offered no evidence on this issue.

In his opinion Judge Bryan recognized, however, there were a number of features of the assignment agreement and the implementing documents which tended to show that the parties intended this to be a security transaction. One was the fact that, out of the disbursements agreed to the made by the assignor, $3000 was to be used as additional security for the fee owner. There was no provision for the return to the assignor of this sum, or any part of it not used for covering a default in the obligations of the building owner's lease, unless the option was exercised. Another was the provision that the assignee was to account to the assignor for any profits during the so-called option period and that losses were to be charged to the repurchase price, in the event that the option was, in fact, exercised. This could imply that the assignee's possession was more constructive than real. The repurchase price for the leasehold under the option was substantially the same as the money advanced to the debtor ($22,000), less approximately the $4200 paid out of that money to Varveris Inc. in payment of the indebtedness of Two Johns Restaurant for fixtures.

A provision which the district judge did not mention was the unusual sanction imposed upon the assignee to protect the assignor against a forfeiture of the leasehold or the encumbering of it, during the option period, through non-payment by the assignee of the rent to the owner of the building or the non-payment of taxes; in either event the lease would automatically revert to the as-

signor without further obligation on its part.

Indeed, the very existence of an option to repurchase, executed contemporaneously and held in escrow, is an indication that the parties intended that the assignor would be able, as they said, "to repurchase" its leasehold. Matthews v. Sheehan, 69 N.Y. 585 (1877). See generally: 3 Powell, Real Property, § 447 at 577–583 (1952); Fogelman, The Deed Absolute as a Mortgage in New York, 32 Fordham L.Rev. 299 at 307–308 (1963).

The Referee, however, decided the case summarily from the bench in favor of the respondent on the ground that there had been a failure of proof by the petitioner-trustee. Later he filed a memorandum of decision containing findings of fact and conclusions of law. The conclusion that there was no debt was predicated upon two of the findings, (a) that neither the agreement itself, nor any of the exhibits which were admitted in evidence, mentioned the existence of a debt or obligation, and (b) that there was no "promissory note or other evidence of debt * * * given by the bankrupt to the respondent * * *." Although one of the conclusions of law stated, "The trustee's proof failed to establish that a debt or obligation * * was created as a matter of law * * ", the only findings of fact upon which this and the other general conclusions of law, holding the assignment to be an outright grant, could be based are those mentioned.

It is well settled in New York that the existence of a debt is fundamental to establishing a conveyance as a security device. Bascombe v. Marshall, 129 App.Div. 516, 113 N.Y.S. 991 (2d Dept.1908), aff'd 198 N.Y. 538, 92 N.E. 1077 (1910); In re Exterior Street, 168 Misc. 575, 6 N.Y.S.2d 110 (Sup.Ct.), aff'd, In re Opening and Extending Exterior Street, 255 App.Div. 767, 7 N.Y. S.2d 643 (1938). The Referee decided there was no debt, not because the amount which the debtor would have to

pay to redeem was not mathematically computable, for he found it to be precisely $26,912.56, but because there was no written instrument stating that a debt or obligation existed. But the pertinent question is whether or not a security transaction was intended, 5 Tiffany, Real Property, § 1394 (1939); and for this purpose parol evidence is admissible as well as any writings bearing upon the issue and the reasonable inferences to be drawn from both sources. Peugh v. Davis, 96 U.S. 332, 24 L.Ed. 775 (1878); Horn v. Keteltas, 46 N.Y. 605, 609–610 (1871); Ensign v. Ensign, 120 N.Y. 655, 24 N.E. 942 (1890); Zivotosky v. Max, supra; and Chase Nat'l Bank v. Tover, 245 App.Div. 615, 283 N.Y.S. 832, aff'd, 271 N.Y. 518, 2 N.E.2d 674 (1935).

It is not necessary to support a finding that a transaction constitutes a mortgage that the trier first be satisfied that there existed a personal promise or covenant on the part of the grantor or mortgagor to repay. Horn v. Keteltas, supra. Section 249 of the New York Real Property Law recognizes this in specifically providing that a mortgage does not imply a personal covenant to pay the sum intended to be secured, and it further provides that in that event, the remedy is confined to the property conveyed as security. This often occurs where the grantor or mortgagor has no personal financial resources other than the real estate conveyed, and the lender requires that the value of the property be greatly in excess of the sum advanced because it is his only recourse. Mooney v. Byrne, supra.

The findings of the Referee show that he considered the absence of an express written statement of a debt was completely determinative and that it was unnecessary to deliberate upon the evidence on the key issue in the case, and he made no findings with respect to it. A trier does not, of course, have to make a finding with respect to every claim of fact on which evidence has been presented; but in this case findings on the basic facts, essential to a determination

of the issue of whether or not this was a mortgage transaction, were required. 5 Moore, Federal Practice, ¶ 52.06(1) at 2659–61 (2d ed. 1951).

A crucial omission in the present case was the absence of any finding as to the value of the leasehold assigned. The appellant's real estate expert, one Hanau, testified that the leasehold had a fair market value of $60,000. Appellee's counsel treated this as inconsequential and offered no evidence of his own. It stands uncontradicted. Moreover, Varveris, a shareholder and officer of the respondent, called by the petitioner as a witness and under questioning by the Referee, testified that Nedick's had offered $1400 per month, plus a percentage of the receipts, for a sub-lease of the store-restaurant. This was apparently corroborative. Perhaps the Referee did not believe the testimony, but the subject of value is nowhere mentioned in the memorandum. In the absence of a finding of some kind on so essential a fact, it can only be concluded that no consideration was given to it.

The importance of value in this case is obvious. If there was credible evidence that the leasehold at the time of the assignment had a fair market value of $60,000 or anything in the range of two or three times the sum received by the assignor, it is highly unlikely that the conveyance was understood or intended by the parties to be an outright sale. Moreover, if there was no personal promise or covenant on the part of the grantor to repay, a gross discrepancy between the money paid by the grantee and the value of the property conveyed would imply the type of mortgage transaction wherein the lender looked to the high value of the security to insure that he would be repaid.

In a New York case in which a warranty deed was given under circumstances which clearly showed it was initially for security purposes but which the grantee later sought to claim to be an absolute conveyance, the court said, "It is not presumable that Lucilia Tracy intended to sell property worth $30,000

for $15,240." Macauley v. Smith, 132 N.Y. 524, 530, 30 N.E. 997, 998 (1892). See also Lade v. Thomas, 108 Misc. 305, 177 N.Y.S. 513, aff'd, 190 App.Div. 930, 179 N.Y.S. 931 (1919); Farmers' & Mechanics' Bank v. Smith (3rd Dept.), 61 App.Div. 315, 70 N.Y.S. 536 (1901); and Mooney v. Byrne, supra. See also Conway's Executors and Devisees v. Alexander, supra; Peugh v. Davis, supra, 96 U.S. at 337; and Annot., 89 A.L.R.2d 1040, § 2 and § 3 (1963).

■ Of course, wide discrepancy between the amount paid and the value of property conveyed has not in itself alone been held to be determinative of a security transaction. But in the circumstances of this case, the past connections and dealings of the parties and the arrangements made between them, as reflected in the unusual provisions of the documents which they executed, suggest so strongly the presence of a mortgage rather than the assignment and option which they were called, that a finding of value of the property conveyed in an amount which is two or three times the amount of money paid by the assignee would point fairly conclusively to a security transaction.

Another matter which might be clarified on remand is the relation between the Bankrupt and the original assignee, Varveris Inc. Appellee's counsel argued that there was no pre-existing debt, but at one stage of the hearing, in trying to explain how the business relationship between the appellant and appellee developed, which ultimately culminated in the assignment, he asserted that the appellee originally put the fixtures in the store and took a chattel mortgage on them. He said that the appellee was "stuck in there" and was drawn in deeper and deeper until it had over $61,-000 invested in the place and was trying to get out of it. Varveris, who appeared to control the original assignee, Varveris Inc., and its assignee, the appellee, also testified that he had put quite a few dollars into the store-restaurant which was Two Johns. Varveris seems also to have controlled Marathon Equipment Inc.

which, on May 18, 1962, after a foreclosure, acquired all of the fixtures and equipment, formerly of Two Johns' store and restaurant.

Although Vlahakis, who controlled the appellant, had an interest in Two Johns, the record does not make it at all clear why the appellant was required to use its assets to pay off the chattel mortgages on the Two Johns' fixtures and equipment which were retained by Marathon Equipment Inc., or why appellee and its counsel were, in effect, arguing to the Referee justification for getting all it possibly could out of the appellant, unless there had been some pre-existing obligation or debt which appellant, 716 Third Avenue Holding Corp., owed through guarantying payment of debts owed by Two Johns to Varveris Inc., or for some other reason. Perhaps this can be clarified both in the evidence presented and in the findings, on rehearing.

There are strong motivations which induce parties to resort to a subterfuge of clothing a mortgage in the guise of an outright conveyance. The lender seeks thereby to avoid the time and expense of foreclosure proceedings and the possible loss of a substantial profit while his acquisition of title is delayed by a redemption period fixed by a court and if a borrower is in desperate financial circumstances, he will of necessity accede to the lender's demand; or where bankruptcy is in the offing, a friendly connivance between the incipient debtor and a lender might adopt such a form of transaction as a means of saving some of the debtor's property from going into the bankruptcy estate; or an apparently outright conveyance might also be used for a mortgage to escape the ½% recording tax on mortgages under § 250 and § 253, New York Tax Law, McKinney's Consol. Laws, c. 60.

The presence of these and perhaps other reasons, prompting the parties to adopt a form which does not truly reflect what they intend, make it necessary that, whenever this is an important issue in a case, the referee make findings rela-

**48**

tive to the presence or absence of the essential factors on which his determination is based.

Of the remaining questions raised on this appeal, those concerning the validity of the recording of the assignment under § 230 of the New York Real Property Law and the applicability of § 16 or § 20 of the New York Stock Corporation Law will largely be determined by the decision on the nature of the conveyance. The final point raised, which was that the assignment was without a fair consideration and rendered the Bankrupt insolvent, would need to be answered only in the event that the assignment was held to be an absolute conveyance, but it could only be answered after a finding of the value of the lease.

The decision of the District Court is reversed and the case is remanded for rehearing by the Referee.